UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
(electronically filed)

UNITED STATES OF AMERICA PLAINTIFF

V. CRIMINAL ACTION NO. 3:26-CR-90-CHB

LAJUAN SANDERS DEFENDANT

**MOTION FOR REVIEW AND REVOCATION OF ORDER OF DETENTION AND FOR RELEASE ON CONDITIONS, OR IN THE ALTERNATIVE, FOR TEMPORARY RELEASE UNDER 18 U.S.C. § 3142(i)**

*** *** ***

Comes the defendant, Lajuan Sanders, through counsel, and moves the Court, pursuant to 18 U.S.C. § 3145(b), to review and revoke the Order of Detention Pending Trial entered by the Magistrate Judge on August 4, 2026 (DN 28), and to release him on conditions under 18 U.S.C. § 3142(c). In the alternative, Mr. Sanders moves for temporary release under 18 U.S.C. § 3142(i) because detention is preventing him from reviewing the Discovery and preparing his defense. Mr. Sanders requests a hearing. In support of this Motion, Mr. Sanders states the following:

**Introduction.**

The Magistrate Judge did not find that Mr. Sanders poses a risk of flight. The detention order rests on dangerousness alone, and on a short list of reasons: the nature of the charge, a criminal history whose violent component is a 1998 conviction, and the government's assertion that Mr. Sanders engaged in criminal activity while he was on supervision. (DN 28 at 3.) That last assertion was the centerpiece of the government's argument at the detention hearing. The government told the Court that Mr. Sanders was dealing drugs while he was on pretrial release, during his own federal trial.

The Discovery, most of which was produced after the hearing, does not support that assertion. No intercepted call captures Mr. Sanders offering to sell anything to anyone during that period. The claim rests entirely on co-defendant Michael Morris's later descriptions of an offer he said he received. Morris gave different accounts of what was supposedly offered, and in every account he says he turned it down. On the other side of the ledger, Mr. Sanders was on location monitoring for roughly five months in his prior federal case. He appeared for every court date, sat through his trial, and was acquitted.

At his arraignment on the superseding indictment in this case, Mr. Sanders declined to participate in the arraignment over zoom, and requested to be returned to his cell instead, claiming he did not believe the Court had jurisdiction as the case was bogus. (DN 51). Counsel addresses that directly. Mr. Sanders has since met with counsel. He understands that this Court has authority over his case, and he will comply with every condition the Court imposes. His conduct in his last federal case is the best evidence of how he responds to court supervision. He complied with location monitoring for about five months, appeared at every proceeding including all three days of trial, and abided by the jury's verdict. One frustrated statement at an arraignment does not outweigh that record.

Detention is also preventing Mr. Sanders from participating in his own defense. The Discovery is voluminous: more than 39,000 Bates-numbered pages, plus wiretap audio. In nearly six weeks of effort, counsel has not been able to get the bulk of it in front of Mr. Sanders at the jail. There is also an Order from this Court that wiretap recordings cannot be copied for the defendants. (In fact, the wiretap recordings have not yet been provided to counsel for Mr. Sanders).

**Procedural history.**

Agents arrested Mr. Sanders on July 29, 2026, when they executed search warrants at his home at 4910 Shumake Court and at 2317 West Hill Street. The original indictment charged him with conspiracy to distribute cocaine. The government moved for detention under 18 U.S.C. § 3142(f)(1). After a hearing on July 31, 2026, the Magistrate Judge ordered Mr. Sanders detained. (DN 28.) On August 5, 2026, the grand jury returned a superseding indictment. It charges Mr. Sanders in Count 1 with conspiracy to distribute 500 grams or more of cocaine between April 13 and July 29, 2026, and in Count 8 with possessing firearms as a convicted felon on July 29, 2026. (DN 31.) Trial is set for February 2, 2027.

In the detention order, the Magistrate Judge found that the presumption under 18 U.S.C. § 3142(e)(3) applied and had not been rebutted, and that the government had proven by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community. (DN 28 at 2–3.) The Magistrate Judge did *not* find that Mr. Sanders posed a risk of nonappearance. (*Id.* at 3.) Of the listed reasons for detention, the order checks only four: that the charged offense involves a controlled substance; prior criminal history; history of violence or use of weapons; and "[p]articipation in criminal activity while on probation, parole, or supervision." (*Id.*) The order does not find that the weight of the evidence is strong. It leaves the "Other Reasons or Further Explanation" section blank. (*Id.*)

**Standard of review.**

When a magistrate judge orders a defendant detained, the defendant "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and the motion "shall be determined promptly." 18 U.S.C. § 3145(b). The district court reviews the detention order *de novo*. *See, United States v. Yamini*, 91 F. Supp. 2d 1125, 1129

(S.D. Ohio 2000), and *United States v. Taylor* (WDKY, September 22, 2025), 2025 WL 2699216. The Court may consider the record from the hearing before the Magistrate Judge and any additional evidence the parties present.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). In a case where the § 3142(e)(3) presumption applies, the presumption places only a burden of *production* on the defendant. The burden of *persuasion* remains with the government at all times. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Once the defendant produces some evidence that he is not dangerous, the presumption does not disappear but is weighed with the other § 3142(g) factors. *Id.* To detain on the ground of dangerousness, the government must prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(f); *Stone*, 608 F.3d at 946. The weight-of-the-evidence factor goes to the weight of the evidence of *dangerousness*, not the weight of the evidence of guilt. *Stone*, 608 F.3d at 948. And nothing in the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

## I. The record does not support the finding that Mr. Sanders engaged in criminal activity while on supervision.

Mr. Sanders was arrested by ATF on November 6, 2025, on a federal felon-in-possession charge, and released on location monitoring. (Case No. 3:25-cr-166, DN 10). A jury acquitted him on April 16, 2026, after a three-day trial. (USA-000078; USA-000778.) The government's claim of criminal activity while on supervision rests on that period of pretrial release, specifically the days of the trial itself.

The government began intercepting Morris's phone on April 9, 2026. (Shumake Aff. ¶ 13.) The discovery from the trial week contains no recorded call in which Mr. Sanders offers to sell, or sells, anything. What it contains is Morris, on his own phone, telling other people about an offer he says he received and refused:

1. On April 15, Morris told a third party that Mr. Sanders "asked MORRIS if he wanted one," and that Morris "declined" and "walked on out of his house." Morris added that he believed Mr. Sanders would be found guilty. (USA-002442, TT2 Session 395.)
2. On April 16, Morris told another third party that a man on his "third day of trial" had "at first said he wanted to give MORRIS something and then tried to sell him something," and that Morris "declined to buy anything." (USA-002456, TT2 Session 441.)
3. Later on April 16, Morris told another caller that the man on trial had offered to sell him "one," and that Morris "declined the offer." In the same conversation, Morris described the offer as "a pound a weed." He also said he hoped they would give the man "80 years." (USA-002461–62, TT2 Session 454.)
4. On April 18, after the acquittal, Morris again recalled being invited over and offered "something" that he "didn't want." (USA-002478, TT2 Session 537.)

These statements cannot carry the government's burden by clear and convincing evidence. They are hearsay accounts by a co-defendant who, on the same recordings, expresses open hostility toward Mr. Sanders. They are inconsistent about what was supposedly offered: "one" in some versions, a pound of marijuana in another, unspecified "something" in others. And in every version, no transaction took place. No call between Mr. Sanders and anyone else during

this period reflects a drug offer. No surveillance or seizure corroborates one. The Bail Reform Act expressly provides that the rules of evidence do not apply at detention hearings, permitting courts to consider proffered and hearsay information. However, the Sixth Circuit has made clear that this relaxed evidentiary standard does not eliminate the court's discretion to assess the reliability and accuracy of the information presented. *See*, 18 U.S.C. § 3142(f), *United States v. Webb* (6th Cir. 1998), and *United States v. Stone* (6th Cir. 2010). Mr. Sanders's own recorded statements from that week concern his trial: that he expected to be acquitted and that he would not testify. (USA-002441, TT2 Session 393.)

The record that does exist from that period favors release. Mr. Sanders spent roughly five months on location monitoring while facing a federal charge that carried up to fifteen years in prison. Even Morris recognized he was on "the watch." (USA-002464; USA-002478.) Sanders appeared for every court date, including all three days of trial. He was acquitted. The federal probation officer has confirmed that, other than the recent fact that the current Indictment includes the time period that Mr. Sanders was in trial, there were no problems with Mr. Sanders during his pre-trial and during-trial release on his 2025 case. These circumstances provide direct evidence that conditions of release work for Mr. Sanders.

The checkbox itself is also a poor fit for the record. Mr. Sanders was not on probation, parole or supervised release. He was on pretrial release in a case in which he was presumed innocent and was later acquitted. In fact, the Order leaves unchecked the separate box for a defendant who was "[o]n . . . release pending trial . . . at the time of the alleged offense." (DN 28 at 3.)

**II. The remaining § 3142(g) factors do not establish by clear and convincing evidence that no conditions will protect the community.**

**A. Nature and circumstances of the offense.** Count 1 is a drug offense, and the presumption therefore applies. But the government's case on Count 1 rests largely on agent interpretations of intercepted conversations about drinks and bottles, which Mr. Sanders disputes. No controlled substances were recovered from Mr. Sanders's home or from the West Hill Street property. Count 8 charges possession of firearms recovered from those properties on July 29. Mr. Sanders will move to suppress that evidence, and denies any knowledge of the firearms.

**B. Weight of the evidence of dangerousness.** The Magistrate Judge did not find that the weight of the evidence was strong. (DN 28 at 3.) As discussed above, the allegation that Mr. Sanders engaged in criminal conduct while on release comes from a co-defendant's inconsistent retellings. Under *Stone*, this factor concerns the evidence of dangerousness, not guilt. 608 F.3d at 948.

**C. History and characteristics.** Mr. Sanders is fifty years old. He has lived in Louisville all his life. He owns his home at 4910 Shumake Court and the property at 2317 West Hill Street. Mr. Sanders has three children living in Louisville and a girlfriend, Andrea Miller. He owns a property management company, GameBred Realties, LLC, in Louisville. He does not own a passport. His only conviction involving violence dates to 1998, twenty-eight years ago. His only other felony conviction dates to 2006, twenty years ago. Since then, he has no convictions. An LMPD case was dismissed on November 12, 2025, and he was acquitted in federal court in April 2026. (USA-000778–80.)

**D. Danger to the community.** A defendant's danger must be assessed in light of the conditions available. Here, the conditions Mr. Sanders proposes below would restrict him to his

home, monitor his location at all times, and prohibit any contact with co-defendants. A third part custodian is available as well, if the Court so desires. The government cannot show by clear and convincing evidence that these conditions would fail, particularly when Mr. Sanders complied with location monitoring in his last federal case.

**III. New information warrants reconsideration.**

Even apart from *de novo* review, a detention hearing may be reopened when "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The detention hearing took place before the government's discovery production of August 7, 2026, which included the intercept linesheets summarized above. Those linesheets show that the government's claim of criminal activity during the trial rests only on Morris's accounts of a declined offer. Mr. Sanders could not have presented that information at the hearing. The difficulty of reviewing discovery from the jail, discussed below, is also new and bears directly on the question of release.

**IV. Detention is preventing Mr. Sanders from reviewing the discovery and assisting in his defense.**

A judicial officer "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The detention order itself directs that Mr. Sanders "be afforded a reasonable opportunity for private consultation with defense counsel." (DN 28 at 4.) The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to the assistance of counsel for his defense. The Supreme Court in *Faretta v.*

*California,* 422 U.S. 806 (1975), held that this language necessarily implies a corollary right: the accused personally has the right to make his own defense. The Court reasoned that the Amendment does not provide merely that a defense shall be made for the accused, but grants to the accused personally the right to make his defense, because it is he who suffers the consequences if the defense fails. *Id.* at 820. This right to self-representation is thus necessarily implied by the structure of the Amendment. *Id*. at 819.

Under 18 U.S.C. § 3142(i), a judicial officer may, by subsequent order, permit the temporary release of a pretrial detainee, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason. The defendant bears the burden of establishing circumstances warranting temporary release. *United States v. Bothra*, 838 F. App'x 184 (6th Cir. 2021). Courts in this circuit evaluating whether pretrial release is necessary for defense preparation under § 3142(i) have considered three factors: (1) the time and opportunity the defendant had to prepare for trial and participate in his defense; (2) the complexity of the case and volume of information; and (3) the expense and inconvenience associated with preparing while incarcerated.

The discovery in this case runs to more than 39,000 Bates-numbered pages. It includes months of wiretap linesheets and transcripts from multiple target telephones, surveillance reports, GPS and pole-camera data, and audio recordings. The government's case depends on its interpretation of Mr. Sanders's and Morris's words. Mr. Sanders is the person best able to explain what those conversations were about, who the speakers were, and what they meant. Counsel cannot prepare a defense, evaluate a plea, or prepare for trial without his review.

Counsel has had great difficulties getting the discovery to Mr. Sanders:

1. On September 11, 2026, counsel mailed a flash drive containing the discovery to Mr. Sanders at Oldham County Detention Center. As of the filing of this motion, the facility reports that it has not been received.

2. On Friday, October 16, 2026, counsel personally delivered a second flash drive to the facility. Mr. Sanders was finally able to begin viewing the Discovery two days ago, on October 21st, when he was allowed a one-hour time slot. Facility staff advised that only two computers are available for detainees to review discovery.

3. Counsel asked whether a paper copy could be provided instead. Staff advised that a paper copy would not solve the problem, because the facility has only three rooms for reviewing discovery. A paper copy of this production would also be extremely costly to reproduce.

Mr. Sanders has now been detained for nearly three months without seeing much of the evidence against him. Release on the conditions proposed below would let him review the discovery with counsel. If the Court declines to revoke the detention order, Mr. Sanders asks in the alternative that the Court order temporary release under § 3142(i) for defense preparation, or enter an order directing the United States Marshal and the facility to provide Mr. Sanders with regular, meaningful access to the electronic discovery, including a dedicated device and adequate time to review it.

**V. Proposed conditions of release.**

Mr. Sanders proposes the following conditions, and will agree to any other condition the Court finds appropriate:

1. Home incarceration at the home of Andrea Miller at 181 Earlywyne Drive, in Taylorsville, KY, with GPS location monitoring, leaving only for court, meetings

with counsel, medical needs, and other absences approved in advance by Pretrial Services;

2. Third-party custody with his girlfriend, Andrea Miller, who has agreed to report any violation to Pretrial Services;

3. No contact, direct or indirect, with any co-defendant or any person named in the discovery as a witness, except through counsel;

4. No possession of firearms, ammunition or other dangerous weapons, and removal of any such items from the residence before release;

5. Consent to searches of the residence by Pretrial Services;

6. Drug testing as directed by Pretrial Services;

7. Restrictions on cellular telephones, if the Court considers them appropriate;

8. Any other condition the Court considers necessary under 18 U.S.C. § 3142(c).

WHEREFORE, Mr. Sanders respectfully requests that the Court set this motion for a prompt hearing; revoke the Order of Detention Pending Trial (DN 28); and release him on the conditions proposed above or such other conditions as the Court deems appropriate. In the alternative, Mr. Sanders requests temporary release under 18 U.S.C. § 3142(i), or an order directing that he be given meaningful access to the discovery at the facility where he is held.

Respectfully Submitted,

s/ Tricia Lister____
Tricia Lister
600 West Main Street, Ste 100
Louisville, KY 40204
(502) 235-9841
Counsel for Mr. Sanders

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Tricia Lister
Tricia Lister