UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA PLAINTIFF

v. CRIMINAL ACTION NO. 3:26-CR-90-CHB

LAJUAN SANDERS DEFENDANT

**RESPONSE TO MOTION TO REVOKE DETENTION ORDER (D.N. 57)**
(ELECTRONICALLY FILED)

Comes the United States of America, by counsel, Assistant United States Attorney Joshua R. Porter, in response to the Defendant's motion to revoke detention order, (D.N. 57), and states its objection to the request. Magistrate Judge Edwards's decision of July 31, 2026, was based on the evidence presented to her during an adversarial hearing and is in keeping with the parameters of the Bail Reform Act. There are no conditions that would assure the community's safety other than this Court detaining the Defendant; and the Defendant has failed to show requisite necessity of temporary release for trial preparation.

## BACKGROUND

Between April 13, 2026, and July 22, 2026, the Defendant conspired with seven other individuals in a drug trafficking organization responsible for distributing over 500 grams of cocaine in the Western District of Kentucky. Following his arrest on July 29, 2026, a detention hearing was held, the Defendant was represented by counsel. On August 5, 2026, a Superseding Indictment was returned in which the Grand Jury charged the Defendant with possessing 7 firearms with the knowledge that he had previously been convicted of four felonies in two cases. The Grand Jury also noticed the Defendant that he was subject to an increased sentence due to his previous violent felony conviction for Manslaughter in the 1st Degree in 1998.

At his detention hearing, the Defendant argued for home detention largely due to the fact that he was recently on similar restrictions for a firearm possession case from the Western District of Kentucky for which he was ultimately acquitted. The United States highlighted the Defendant's criminal history described in his pretrial services report (PSR). Specifically, the Court was made aware that the Defendant was convicted of Manslaughter in the 1st Degree for the killing of James Chatman in 1998; and that while on he was released on parole he was convicting of Cultivation of Marijuana and being a Persistent Felony Offender in the 2nd Degree in 2006. The United States also argued that the time frame of his current charges occurred while he was on release and during his latest firearms trial. The United States argued that the Defendant presents a danger to the community, which by definition includes the risk that the defendant will commit new offenses if released. The Magistrate Judge ruled that the Defendant was unable to rebut the presumption in favor of detention under Title 18 U.S.C. § 3142(e). (D.N. 28, Order of Detention Pending Trial).

On October 23, 2026, the Defendant filed a motion to revoke the Magistrate's Order of Detention or in the alternative to release him temporarily under Title 18 U.S.C. 3142(i). (D.N. 57). The Defendant's motion offers no new or different information from what was presented during the detention hearing, nor does it refute any of the Magistrate's findings. The proposed conditions of release do nothing to rebut the statutory presumption; and the Defendant has failed to show a reason for temporary release.

## ARGUMENT

The Magistrate Judge was correct to detain the Defendant and the motion to Revoke Detention should be denied. This Court reviews the Magistrate's determination to detain *de novo*. *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985). Under the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial if a "judicial officer finds no condition or

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." [§ 3142(e)(1)]. The judicial officer's finding that the defendant endangers the community must be supported by "clear and convincing evidence. § 3142(f)(2)(B).

Once the United States establishes the presumption in favor of detention, the defendant has a "burden of production" and the United States retains a "burden of persuasion." *United States v. Stone*, No. 10-1618, slip op. at 4 (6th Cir. June 22, 2010) (internal quotations omitted) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985)). "Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence" that he does not pose a risk to the community. *Id.* at 5 (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991).

Even if a defendant satisfies his burden of production, the presumption remains a factor to be considered by this Court because the presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* (citations omitted). This Court must consider certain factors listed in § 3142(g) when it determines if the United States has met its burden: (1) "the nature and circumstances of the offense," (2) "the weight of the evidence against the defendant," (3) "the history and characteristics of the person, including"-

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law,

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

Here, the record supports this Court finding that the defendant is a danger to the community by clear and convincing evidence. The Defendant believes that calls intercepted from co-defendant Michael Morris' phone do not support the Government's allegation that he was involved in drug trafficking while on his previous release. The Defendant's own summation of the calls during this time period undercuts his argument. At approximately 6:30 p.m. on April 15, 2026, the Defendant called Morris and after discussing his trial he repeatedly requested that Morris come to his house to meet with him. (TT2 Session 393). Roughly an hour later Morris called another individual describing how the Defendant wanted to sell him drugs but that he did not want to buy his drugs. (TT2 Session 395). Three further calls (TT2 Session 441; TT2 Session 454; and TT2 Session 537) show Morris describing the same interaction. There are no inconsistencies in his descriptions, "one" or "something" are ways to describe one pound of marijuana. There is clear and convincing evidence that Defendant offered to sell drugs to another drug dealer while he was on bond release. Even if the offer was declined, the evidence is highly probable that the Defendant was in possession of a pound of marijuana which would be clear violation of his supervised release.

Further, the calls and statements from Morris are not hearsay. Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The foundation for admission of the statement is that it: (1) there was a conspiracy, (2) its members included the declarant and the person against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy. All three elements are met: there is ample evidence of drug dealing conspiracy; Morris and the Defendant are members of the conspiracy; Morris' statements are made within the conspiracy timeframe charged by the Grand Jury; and they further the conspiracy by describing the Defendant's insistence on selling drugs

despite being in the middle of a trial. Indeed, not long after the Defendant was acquitted he was intercepted on the wire setting up drug deals with Morris.

> -On May 4, 2026, the Defendant told Morris “You can take two shots”. Morris later replied “I want to make sure, uh, I can afford the bottles. That’s why I’m asking you.” The Defendant responded “I ain’t going to let you take my whole bottle. We’ll take a shot or two, then go back home and sleep, and get you some rest okay?” Morris continued to ask “I hear, I hear that, but how much it costing me for the bottle?” The Defendant ended the conversation and said “Man, I said come on over.”
>
> -On May 16, 2026, the Defendant asked Morris “did you want me to get two cases of beer?” Morris confirmed “yeah”. The Defendant asked “or one? Two?” Morris confirmed again “two…that’s what I want.” The Defendant ended the conversation and said “alright, I’ma call you back.”

On both dates, a GPS vehicle tracker on Morris’ vehicle showed a short stay at 4910 Shumake Court. Following the May 16th call and short stay at Shumake Court, Morris was intercepted calling his wife and co-Defendant Miriam Thompson-Morris and the two discussed how Morris was able to fit everything in a pizza box.

The April 15th calls establishing that he was violating his previous release were just one factor that proved the danger posed by the Defendant. The Magistrate Judge was also told that when agents arrested the Defendant at 4910 Shumake Court, 3 firearms were found. Further the Magistrate Judge was informed that agents recovered 4 additional firearms during a search warrant at 2317 West Hill Street, a residence owned by the Defendant. Notwithstanding his recent acquittal for illegal firearm possession, the Defendant was once again before a court accused of possessing

larger numbers of firearms and being involved in a drug trafficking conspiracy. Combine all of these factors with the Defendant's criminal history of violence, marijuana cultivation and violating parole, and the Magistrate Judge was more than justified ordering detention based on dangerousness.

Nothing in the Defendant's motion rebuts the presumption in favor of detention. If anything, the conditions he proposes for release and the information they are based on raise further concerns. For example, the Defendant proposed that he be released to home incarceration with his girlfriend Andrea Elliott at 181 Earlywyne Drive; and that Ms. Elliott act as third-party custodian who would report any violation. (D.N. 57). Ms. Elliott was present at 4910 Shumake Court on July 29th when the Defendant was arrested and firearms were seized. Ms. Elliott told agents that she was a prostitute and gave conflicting statements on how she got to the residence. (see attached Sanders Arrest Report). Ms. Elliott also has a bench warrant that has been active since April 17th from Spencer County District Court for Operating on a Suspended or Revoked License. See case no. 25-T-0809. Additionally, the Defendant claims that he "owns a property management company Game Bred Realties, LLC." (D.N. 57 PageID #314). There is no mention of LLC ownership in his PSR, rather the Defendant claimed to work for the last ten years in "Complete Renovations". According to the Kentucky Secretary of State, "Game Bred Realties, LLC" was administratively dissolved on October 2, 2025. (see attached Certificate of Administrative Dissolution).

The remaining arguments requesting release for adequate trial preparation are similarly without merit. For a temporary release of an individual who has been found to pose a danger to the community, the Court must find that release is necessary for the preparation of the person's defense. Title 18 U.S.C. § 3142(i). Courts should consider: "(1) the time and opportunity the

defendant had to prepare for the trial and participate in his defense, (2) the complexity of the case and volume of information, and (3) expense and inconvenience associated with preparing while incarcerated." *United States v. Scarborogh*, 821 Fed. Appx. 598, 599 (6th Cir. 2020) quoting *United States v. Bothra*, 2020WL 2611545 *2 (6th Cir. May 21, 2020). "The Defendant has the burden of establishing circumstances warranting temporary release…". *Id.*

There is, of course, an inherent inconvenience in being detained pre-trial. But each of the three reasons cited by the Defendant concern inconveniences which every one of his detained co-defendants are experiencing. The Defendant has not alleged that he is being denied access to his counsel or to any in-person meetings with his counsel; "he has had adequate access to his counsel throughout [time detained]." *Id.* He has been provided a digital copy of the discovery, a computer with which to access it, and a one hour at a time slot to review. If there are concerns about the length of time to prepare for trial the proper remedy would be a motion to continue the trial date, not temporary release. Lastly, the Defendant will not bear any expenses preparing for trial given that his counsel is appointed.

The Magistrate Judge properly reviewed all the evidence presented to her and applied it to the applicable law. The Defendant has not offered any new evidence that would have an impact on the § 3142(g) factors or would rebut the presumption in favor of detention. The Defendant has also failed to establish necessity for temporary release under § 3142(i). There is no reason for this Court to reverse or revoke the order of detention, and the United States respectfully asks that the defendant's motion be denied.

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney

s/Joshua R. Porter
Joshua R. Porter
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 537-2038

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on defense counsel via the Court's ECF system on November 2nd, 2026.

s/Joshua R. Porter
Joshua R. Porter
Assistant United States Attorney